IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLEN BYRD | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROBERT COLLINS, ET AL. | : | NO. 10-2702 |

MEMORANDUM

**Padova, J.**                                                                                                October 24, 2011

Before the Court is Glen Byrd's Petition for Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254. On February 15, 2011, Chief United States Magistrate Judge Thomas J. Rueter filed a Report and Recommendation that recommends denying the Petition in its entirety. Petitioner has filed objections to the Report and Recommendation. For the reasons that follow, we overrule Petitioner's objections, adopt the Report and Recommendation as set forth herein, and deny the Petition with prejudice.

I.     FACTUAL AND PROCEDURAL BACKGROUND

On April 5, 2004, a jury convicted Glen Byrd of two counts of first degree murder, carrying a firearm without a license, and possession of an instrument of crime arising from the January 3, 2001 murders of Lawrence Guillaume and Jamal Small.[1] Commonwealth v. Byrd, May Term 2001, No. 0356-357, slip op. at 1-3 (Phila. Cnty. Ct. of Common Pleas Sept. 2, 2004) ("Byrd I"). The Pennsylvania Superior Court summarized the testimony of four of the witnesses at Byrd's trial as follows. Patricia Kirby testified that Lawrence Guillaume and his sister-in-law Carla were at her apartment on the night of January 3, 2001. Commonwealth v. Byrd, No. 2723 EDA 2004, slip op.

---

[1]This was Byrd's second trial. The first trial commenced in October 2002 and the trial court declared a mistrial after the jury deadlocked. Commonwealth v. Byrd, No. 2723 EDA 2004, slip op. at 3 (Pa. Super. Ct. Dec. 7, 2005).

at 1 (Pa. Super. Ct. Dec. 7, 2005) ("Byrd II").  Byrd, who was wearing a red hooded sweatshirt and bright yellow ski jacket, banged on Patricia's door and asked to speak with Guillaume.  Id. at 1-2.  Patricia saw Jamal Small behind Byrd when Guillaume went outside her apartment to speak with Byrd.  Id. at 2.  After Patricia went back inside her apartment, she heard a noise that she thought was gunfire.  Id.  She went outside and saw Jamal Small "crawling and moaning outside her door."  Id.  She did not see Byrd.  Id.  After the police and paramedics arrived, Patricia went back outside and saw Guillaume laying dead in the bushes outside her apartment.  Id.

Lavern McCall testified that he knew Byrd and Jamal Small from the neighborhood.  Id.  On the night of January 3, 2001, McCall saw Byrd, who was wearing a yellow and red jacket, talking with Small by the bushes near Patricia's apartment.  Id. (internal quotation marks omitted).  A short time later, McCall saw Byrd and Small standing at Patricia's open front door, through which he could also see Guillaume.  Id.  McCall subsequently heard between four and six gunshots and saw Byrd walk away from Patricia's apartment.  Id.  McCall also testified that he saw a fourth man, Nate, at Patricia's door and, "after the gunshots, Nate left the house and walked away quickly."  Id. at 2 n.5.

Leslie Rollins testified that she was Guillaume's girlfriend.  Id.  She lived across the street from Patricia and had known Byrd for years.  Id. At 2-3.  She was in her home around 11:30 p.m. on January 3, 2001, when she heard gunshots.  Id. at 3.  She looked outside her window two or three seconds later and saw Byrd, "wearing a yellow jacket with a red hood, run on Patricia's side of the street."  Id.

Jerome Small, Jamal Small's brother, testified that he spoke to Byrd shortly after the shooting.  Id.  Byrd told Jerome that: "(1) Jamal had brandished a gun; (2) as the men struggled for

the gun, [Byrd] shot Lawrence; and (3) [Byrd] did not shoot Jamal." Id.

The Superior Court also noted that Guillaume was shot five times and was pronounced dead at the scene. Id. at 3. Small was shot once in the chest and died at the hospital. Id. The police recovered a gun at the scene. Id. Byrd's fingerprints were not on the gun. Id.

On April 7, 2004, the jury sentenced Byrd to life imprisonment for each count of first degree murder. Byrd I at 1. A sentencing hearing was held on May 19, 2004, during which the trial court sentenced Byrd to two terms of life imprisonment, the trial court did not impose any additional penalties for Byrd's other counts of conviction. Id.

Byrd filed a post-sentence motion for relief on May 25, 2004. Id. That Motion was denied on September 2, 2004. Id. Byrd then appealed to the Pennsylvania Superior Court, which affirmed his conviction and sentence on December 7, 2005. Byrd II at 1. Byrd's appeal to the Pennsylvania Supreme Court was denied on July 26, 2006. Commonwealth v. Byrd, 903 A.2d 536 (Pa. 2006) (Table).

On January 3, 2007, Byrd filed a *pro se* petition under Pennsylvania's Post Conviction Relief Act, 42 Pa. Cons. Stat. Ann. § 9541 *et seq*. (the "PCRA"). Commonwealth v. Byrd, May Term 2001, No. 0357 1/1, slip op. at 1 (Phila. Cnty. Ct. of Common Pleas Dec. 6, 2007) ("Byrd III"). Byrd's attorney filed an amended petition on August 15, 2007. Id. Byrd's PCRA petition raised two claims for relief based on the ineffectiveness of his trial counsel: (1) his trial counsel unreasonably advised him not to testify at this trial, and (2) his trial counsel failed to object to improper remarks made by the prosecutor during closing arguments. Id. at 2. The trial court found that these claims lacked merit and dismissed Byrd's PCRA petition on December 6, 2007. Id. Byrd appealed to the Pennsylvania Superior Court, which affirmed on September 9, 2009. Commonwealth v. Byrd, No.

21 EDA 2008, slip op. at 1 (Pa. Super. Ct. Sept. 9, 2009).

Byrd filed the instant Petition on March 11, 2010. He raises four claims for relief: (1) his trial counsel was ineffective for advising him not to testify at trial; (2) his trial counsel was ineffective for failing to object to improper comments and misstatements made by the prosecution during opening and closing arguments; (3) there was insufficient evidence to support his convictions for first degree murder and weapons offenses; and (4) the trial court failed to suppress a witness statement even though the prosecution did not disclose that statement prior to trial. The Magistrate Judge recommended that the Petition be denied as to all four claims. Byrd objects to the Magistrate Judge's recommendations with respect to the first three claims.

## II.    STANDARD OF REVIEW

Where a habeas petition has been referred to a magistrate judge for a Report and Recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. . . . [T]he court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petition for habeas corpus may be granted only if (1) the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear

and convincing evidence." Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

**III.   DISCUSSION**

Byrd objects to the Magistrate Judge's recommendation that we deny his two claims for relief based on the ineffectiveness of his trial counsel and his claim that the evidence admitted at trial was insufficient to support his conviction for the first degree murder of Jamal Small.[2]

    A.    Ineffective Assistance of Counsel

A claim for ineffective assistance of counsel is based on the Sixth Amendment right to counsel, which exists "'in order to protect the fundamental right to a fair trial.'" Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)) (additional citations omitted). A claim for ineffective assistance of counsel must meet the two-part test advanced by the Supreme Court in Strickland. First, petitioner must show that counsel

> made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687. More precisely, a petitioner must show that (1) his attorney's performance was "unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a 'reasonable probability that, but for counsel's unprofessional errors, the result would have been different.'" United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992) (internal

---

[2]Byrd has not objected to the Magistrate Judge's recommendation that there was sufficient evidence to support his conviction for the murder of Lawrence Guillaume and his convictions for carrying a firearm without a license and possession of an instrument of crime.

citation and quotation omitted). The legal standard used by the Pennsylvania courts for analyzing claims of ineffective assistance of counsel claims is identical to the Strickland standard. Werts, 228 F.3d at 203-04; see also Showers v. Beard, 635 F.3d 625, 630 n.6 (3d Cir. 2011) (citing Werts, 228 F.3d at 203). As a result, Byrd must establish that the Pennsylvania courts' application of that standard was "not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (citations omitted).

      1.      Decision not to testify at trial

Byrd first claim of ineffective assistance of counsel is based on his trial attorney's advice that he (Byrd) not testify at trial. Byrd claims that this advice was unreasonable and prejudiced him during his second trial, because Jerome Small testified during the second trial that Byrd had confessed to shooting Guillaume and there were no witnesses who contradicted that testimony. The PCRA court rejected this claim based on Pennsylvania law which provides that, in order to prevail on a claim that his counsel was ineffective for interfering with his right to testify, a defendant must "'demonstrate either that (1) counsel interfered with his client's freedom to testify, or (2) he gave specific advice so unreasonable as to vitiate a knowing and intelligent decision not to testify on his own behalf.'" Byrd III at 3 (citations omitted); see also Commonwealth v. Miller, 987 A.2d 638, 660 (Pa. 2009) (citing Commonwealth v. Nieves, 746 A.2d 1102, 1104 (Pa. 2000), and Commonwealth v. Uderra, 706 A.2d 334 (Pa. 1998)). The PCRA court found, based on the trial court's colloquy of Byrd, that Byrd was aware of his right to testify and had voluntarily chosen not to testify. Byrd III at 3-4. The PCRA court also found that, since the prosecution's case was "substantially comprised of circumstantial evidence, focusing the defendant's defense on the Commonwealth's evidence, in lieu of recommending defendant himself testify, thereby subjecting

himself to cross-examination, was a reasonable trial strategy." Id. at 4-5.

The Magistrate Judge recommends that we deny this claim because Byrd's decision not to testify at trial was voluntary. The Magistrate Judge bases his recommendation on the trial court's colloquy of Byrd regarding his decision not to testify. (R&R at 16-17.) Byrd stated, during the colloquy, that he had discussed testifying with his attorney and that he, Byrd, had made the decision not to testify. Commonwealth v. Byrd, May Term 2001, No. 0356-357, N.T. at 137-39 (Phila. Cnty. Ct. of Common Pleas Apr. 1, 2004) ("4/1/04 N.T.").

Byrd does not presently challenge the finding that his decision not to testify at trial was voluntary. He objects to the Report and Recommendation on the ground that the Magistrate Judge failed to examine the reasonableness of his trial counsel's advice that he not testify. Byrd argues that his counsel's advice was unreasonable because, in the absence of Byrd's own testimony, "the confession attributed to him [by Jerome Small] was permitted to go totally unchallenged." (Obj. at 6.) Byrd's argument is, however, insufficient to satisfy the prejudice prong of the Strickland test because he has not informed the Court of any of the facts to which he would have testified at trial. See Palmer v. Hendricks, 592 F.3d 386, 394 (3d Cir. 2010) (rejecting Palmer's claim that his attorney was ineffective for interfering with his right to testify where Palmer did not inform the court of any of the facts to which he would have testified, but merely stated "that he would have taken the stand to testify on [his] own behalf to explain [his] side of what really happened if [he had been] allowed to do so") (alterations in original) (internal quotation omitted)). Because Byrd has not satisfied the prejudice element of the Strickland test, we conclude that he has failed to show that his trial counsel was ineffective in advising him not to testify. We further conclude that the Pennsylvania courts' application of the Strickland standard to this ineffective assistance of counsel

7

claim was not objectively unreasonable. We therefore overrule Byrd's objection as his claim that his trial counsel was ineffective in advising him not to testify at his trial.

### 2. Failure to object to prosecutorial misconduct

Byrd's second claim of ineffective assistance of counsel is based on his trial attorney's failure to object to four allegedly improper statements made by the prosecutor during her closing argument. Two of those statements concern McCall's testimony about Nate, the fourth man McCall testified to having seen at the scene of murders. McCall testified at trial that he had seen Nate leaving the scene after he heard the gunshots. The prosecutor asserted, in her closing argument, that "there is no Nate" and made a second statement implying that McCall lied about Nate because McCall would be in danger if his testimony implicated Byrd in the murders. Byrd III at 6 n.2 (internal quotation omitted). The PCRA court rejected Byrd's claims that his attorney was ineffective with respect to the prosecutor's comments about McCall and Nate because Byrd's attorney objected to the prosecutor's comments regarding Nate and the trial court gave a curative instruction with respect to the "there is no Nate" remark. Id. at 6. The Magistrate Judge recommends that we deny Byrd's ineffective assistance of counsel claim with respect to the McCall and Nate remarks because Byrd's trial counsel cannot be found to be ineffective for failing to make objections that he actually made. The Magistrate Judge further recommends that, under these circumstances, the state court's determination that trial counsel was not ineffective in this regard is not contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts in light of the evidence presented to the state courts. (R&R at 21.)

Byrd contends that his trial counsel was also ineffective in failing to object to two statements made by the prosecutor during her closing argument that implied that Byrd was a drug dealer, or had

8

engaged in illegal activity regarding drugs. The prosecutor stated, in her closing argument, that "this case has drug overtones. It has a drug relationship all over it." 4/1/04 N.T. at 173. She also misstated Jerome Small's testimony, recounting for the jury that Byrd told Jerome that he (Byrd) had taken Guillaume's bag. Id. at 161. According to Byrd, that bag contained drugs, implying that he had a drug related motivation for shooting Guillaume.

The PCRA court rejected Byrd's claim regarding the prosecutor's statement that the case "has drug overtones" because the prosecutor did not characterize Byrd as a drug dealer. Id. at 7. The Magistrate Judge recommends that trial counsel was not ineffective for failing to object to this statement because the prosecutor's drug comments did not amount to prosecutorial misconduct and, therefore, the state court's rejection of Byrd's ineffective assistance of counsel claim related to the drug comment was not contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts in light of the evidence presented to the state courts.

Byrd did not raise his claim related to the prosecutor's mischaracterization of Jerome Small's testimony before the state court. The Magistrate Judge recommends that this claim is procedurally defaulted because it was not raised in state court. The Magistrate Judge further recommends that this claim should be denied on the merits because the prosecutor did not argue that Byrd took Guillaume's bag because it contained drugs and, accordingly, did not imply that Byrd had a drug related motive for shooting Guillaume.

Byrd's objections to the Magistrate Judge's recommendations regarding these four aspects of his ineffective assistance of counsel claim merely restate the arguments he made before the Magistrate Judge. We have reviewed Byrd's Amended Petition, his Memorandum of Law, his Response in Opposition (to the District Attorney's Response to the Petition), the state court record,

and the Report and Recommendation. We conclude that Magistrate Judge fully and correctly addressed Byrd's claim that his trial counsel was ineffective in failing to object to these four comments made by the prosecutor during her closing argument. Byrd's objection is, therefore, overruled as to his claim that his trial counsel was ineffective in failing to object to these four comments.

    B.  <u>Insufficient Evidence to Support the Verdict</u>

Byrd's third claim for relief is that the Commonwealth failed to present sufficient evidence to prove his guilt of first degree murder beyond a reasonable doubt. A federal habeas court evaluating a due process claim based upon the sufficiency of the evidence supporting a state court conviction is not required to reevaluate the evidence for a determination of guilt beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-19 (1979). "'Federal courts are not forums in which to re-litigate state trials.'" <u>Lonchar v. Thomas</u>, 517 U.S. 314, 340 (1996) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887 (1983)). Rather, it is the responsibility of a federal habeas court to "ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." <u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993) (citations omitted).

 The Supreme Court has instructed that the proper inquiry to be made is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319 (citation omitted). In essence, the <u>Jackson</u> test does not require the federal habeas court to determine the correctness of the verdict, but to determine whether or not the verdict was rational. <u>Herrera</u>, 506 U.S. at 402. When we conduct this analysis, we apply the sufficiency of the evidence standard "'with explicit reference to the substantive elements of the criminal offense as defined by state law.'"

Robertson v. Klem, 580 F.3d 159, 165 (3d Cir. 2009) (quoting Jackson, 443 U.S. at 324 n.16).

Under the AEDPA, a federal reviewing court applies a presumption of validity to the factual findings of the state courts. Steven v. Delaware Corr. Ctr., 295 F.3d 361, 368 (3d Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)). Such a presumption can only be overcome by a showing of clear and convincing evidence in the record demonstrating the contrary. Id. (citations omitted). When we apply the Jackson test, we look to the evidence that the state courts considered to be sufficient "to meet the elements of a crime governed by state law." Jackson v. Byrd, 105 F.3d 145, 149 (3d Cir. 1997) (citations omitted).

The Pennsylvania Superior Court considered Byrd's sufficiency of the evidence claim on direct appeal and applied Pennsylvania law for sufficiency of the evidence as follows: "'[W]e must determine whether, viewing all the evidence admitted at trial in the light most favorable to the Commonwealth, there is sufficient evidence to enable the fact finder to find every element of the crime beyond a reasonable doubt.'" Byrd II at 5 (alteration in original) (quoting Commonwealth v. Lyons, 833 A.2d 245, 258 (Pa. Super. Ct. 2003)). We conclude that the legal standard applied by the Superior Court to Byrd's challenge to the sufficiency of the evidence is consistent with federal laws established by the United States Supreme Court.

Under Pennsylvania law, "[a] person is guilty of first-degree murder where the Commonwealth proves that (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with specific intent to kill."[3] Commonwealth v. DeJesus, 880 A.2d 608, 611 (Pa. 2005) (citing 18 Pa. Cons. Stat. § 2502 and Commonwealth v.

---

[3]Byrd has not challenged the sufficiency of the evidence underlying his convictions on the weapons charges in his Objections to the Report and Recommendation. Accordingly, we do not address those charges in this Memorandum.

Spotz, 759 A.2d 1280, 1283 (Pa. 2000)). "An intentional killing is a '[k]illing by means of poison, or by lying in wait, or any other kind of willful, deliberate and premeditated killing.'" Id. (quoting 18 Pa. Cons. Stat. § 2502(d)). "Specific intent to kill can be inferred from the use of a deadly weapon upon a vital part of the victim's body." Id. (citing Commonwealth v. Fletcher, 750 A.2d 261, 267 (Pa. 2000)).

The Superior Court found that the evidence at trial was sufficient to sustain Byrd's convictions for first degree murder as follows:

> Trial testimony established [Byrd] and Jamal went to Patricia's apartment, where Lawrence stepped outside to talk to them. Three witnesses, from different positions in and around the apartment, heard gunshots. After the gunshots rang, Jamal was on the ground and bleeding, and Lawrence was dead; both men were shot. [Byrd] was seen running away from the scene. Jamal died shortly thereafter. It is clear that two people were unlawfully killed. Although there was no testimony of first-hand observation of [Byrd] shooting the victims, nor were [Byrd]'s fingerprints found on the recovered gun, the Commonwealth could meet its burden of proving every element of murder of the first degree with circumstantial evidence. Viewing this evidence in the light most favorable to the Commonwealth, we determine the jury could properly infer [Byrd] shot Lawrence and Jamal. The jury could also infer [Byrd] had specific intent to kill the victims by determining he shot a gun at vital parts of Jamal's and Lawrence's bodies. Accordingly, we do not disturb [Byrd]'s conviction of murder of the first degree.

Byrd II at 6-7 (citations and footnote omitted). The Magistrate Judge recommends that the Superior Court was correct when it determined that the evidence at trial, viewed in the light most favorable to the Commonwealth, was sufficient to support Byrd's convictions. (R&R at 30.) The Magistrate Judge bases this recommendation on the eyewitness testimony of Patricia Kirby, Leslie Rollins, and Lavern McCall that placed Byrd at the murder scene when the shots were fired. Commonwealth v. Byrd, No. 0356-357, N.T. at 75-79, 81-82, 87-89, 121-24, 127-28 (Phila. Cnty. Ct. of Common

Pleas Mar. 31, 2004) ("3/31/04 N.T."); 4/1/04 N.T. at 39-53, 64-65.

Byrd objects to the Report and Recommendation on the ground that the evidence at trial was insufficient to support his conviction of the first degree murder of Jamal Small.[4] Byrd contends that the prosecutor never claimed that he intentionally killed Jamal, but argued, instead, that he inadvertently shot Jamal while trying to protect him from being harmed by Guillaume. (Obj. at 9-10.) Byrd argues that, since there is no evidence that he intentionally shot Jamal, the evidence is insufficient to support the specific intent to kill element of a first degree murder conviction with respect to Jamal Small. (Id. at 10.)

Byrd's argument ignores the doctrine of transferred intent and the evidence at trial that supported his conviction of the first degree murder of Jamal Small pursuant to that doctrine. While specific intent to kill the victim is an element of first degree murder under Pennsylvania law, see 18 Pa. Cons. Stat. Ann. § 2502(a); DeJesus, 880 A.2d at 611, "under the doctrine of transferred intent, the intent to murder may be transferred where the person actually killed was not the intended victim." Commonwealth v. DeJesus, 787 A.2d 394, 398 (Pa. 2001), abrogated on other grounds as recognized in Commonwealth v. Cousar, 928 A.2d 1025, 1043 (Pa. 2007) (citing 18 Pa. Cons. Stat. § 303(b)(1), Commonwealth v. Gaynor, 648 A.2d 295, 298 (Pa. 1994), and Commonwealth v. Gibbs, 626 A.2d 133, 138 (Pa. 1993)). The doctrine of transferred intent applies even where the intended victim was killed along with the unintended victim. Sampson v. Grace, Civ. A. No. 06-5331, 2008 WL 687483, at *25 (E.D. Pa. Mar. 11, 2008) (citing DeJesus, 787 A.2d at 398-400). Under Pennsylvania law, "[i]ntent may be both directed at the intended victim and transferred to the

---

[4]Byrd does not object to the Magistrate Judge's conclusion that the evidence at trial was sufficient to support his conviction for the first degree murder of Lawrence Guillaume.

unintended victim." Id. (citing DeJesus, 787 A.2d at 398-400, and Commonwealth v. Bullock, 913 A.2d 207, 218-29 (Pa. 2006)).

The prosecutor sought Byrd's conviction for Jamal Small's murder pursuant to the doctrine of transferred intent. The prosecutor asserted during her closing that Jamal Small was killed because he got in the way when Byrd was shooting Guillaume: "[Jamal] got shot once, because he was in the way. He was not the intended target. But he was killed nonetheless." 4/1/04 N.T. at 162. The prosecutor then argued that Byrd was guilty of the first degree murder of Jamal Small through the doctrine of transferred intent:

> If you shoot somebody in a vital part of their body with a deadly weapon, you intend to kill 'em. Well, Larry Guillaume was shot six times, at least. Look at the number, the number of the times that this person was shot. You know that whoever it is, the defendant intended to hill him.
>
> If you find that he had a specific intent to kill him, then the next thing is the doctrine of transferred intent. Ladies and gentlemen, Jamal Small got in the way. He wasn't the intended target, but he was actually hit. And common sense will tell you that you don't get a free killing just because you got bad aim. Common sense.

Id. at 176. The trial court instructed the jury that it could find Byrd guilty of the first degree murder of Jamal Small pursuant to the doctrine of transferred intent:

> If you find beyond a reasonable doubt that the defendant had the specific intent to kill Lawrence Guillaume and by his actions also killed Jamal Small as well, you may transfer his specific intent to kill Lawrence Guillaume to the killing of Jamal Small. That is the concept of transferred intent, where it is intended that one person is killed and then another person is killed as well.

Commonwealth v. Byrd, No. 0356-357, N.T. at 21 (Phila. Cnty. Ct. of Common Pleas Apr. 2, 2004). This jury instruction correctly states Pennsylvania law with regard to the doctrine of transferred

intent. See DeJesus, 787 A.2d at 398-400.

Byrd does not object to the Magistrate Judge's recommendation that the evidence is sufficient to support his conviction of the first degree murder of Lawrence Guillaume. We have reviewed that evidence and find that there was evidence presented at trial that Byrd was physically present outside of Patricia Kirby's apartment with Jamal Small and Lawrence Guillaume; shots were fired, Small suffered one gunshot wound to the chest and Guillaume suffered six gunshot wounds; Small and Guillaume both died as a result of their gunshot wounds; Byrd was seen running away from the scene; the police recovered two guns at the scene, neither had been fired; the murder weapon was not recovered; Byrd had one hand in his pocket when he left the scene; and Byrd admitted to Jerome Small that he killed Guillaume. 3/31/04 N.T. at 75-79, 81-82, 87-89, 121-24, 127-28, 177-83; 4/1/04 N.T. at 13, 16, 18, 20, 39-46, 64, 86-87. Viewing this record in the light most favorable to the prosecution, we conclude that rational jurors could have found that Byrd was guilty of the first degree murder of Lawrence Guillaume and that he was guilty of the first degree murder of Jamal Small pursuant to the doctrine of transferred intent. Byrd's objection is, therefore, overruled as to his claim that there was insufficient evidence to support his conviction for the first degree murder of Jamal Small.

## III. CONCLUSION

Upon careful consideration of Byrd's objections to the Report and Recommendation, we find that none of the objections has merit. Consequently, we overrule Byrd's objections and approve and

adopt Magistrate Judge Rueter's Report and Recommendation.

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.